UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES K. GOLDSMITH, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO. 2:07-cv-00970-RAJ-JLW |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES WALKER, Warden, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Respondent.[1] | ) | |
| _____ | ) | |

I.      INTRODUCTION

          Petitioner James Goldsmith is currently incarcerated at the California State Prison - Sacramento, in Represa, California.  He was convicted by a jury of one count of receiving stolen property and one count of possessing drug paraphernalia in Sacramento County Superior Court on February 26, 2004.  Because he had previously been convicted of five robberies, he was sentenced for the most recent offenses under California's "Three Strikes Law" (Cal. Penal Code. §§ 667(b)-(i), 1170.12).  He is currently serving a sentence of twenty-nine-years-to-life and has filed a second amended petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2004 conviction and sentence.  (*See* Docket 1.)

_____

          [1] Counsel for respondent requests that Mr. Walker's name be substituted for the prior respondent, D.K. Sisto, as petitioner has moved facilities and is currently incarcerated at the California State Prison - Sacramento, in Represa, California, where James Walker is the Warden.  The Court has made the requested substitution, pursuant to Federal Rule of Civil Procedure 25(d).

01          Respondent has filed an answer to the second amended petition in which he contends

02   that petitioner failed to timely comply with California's state court filing rules, resulting in a

03   procedural default that bars federal consideration of his claims.  (*See* Dkt. 21 at 11-15.)  In the

04   alternative, respondent asserts that petitioner's claims are without merit.  (*See id.* at 15-23.)

05          Although petitioner did not file a traverse to respondent's answer, the briefing is

06   nevertheless complete and this matter is ripe for review.  The Court, having thoroughly

07   considered the record, recommends the Court find that the second amended petition is

08   procedurally barred as untimely.  Petitioner's procedural default is a fully sufficient basis for

09   denial of his petition.  But even if petitioner attempts to make, and if this Court permits him to

10   make, a belated showing to avoid his procedural default, his second amended petition must

11   fail on the merits.  Under either basis, this action should be dismissed with prejudice.  This

12   disposition mirrors the rulings of the Sacramento County Superior Court.

13          II.          FACTUAL AND PROCEDURAL HISTORY

14          Petitioner is challenging his 2004 conviction for possession of stolen property and

15   possession of drug paraphernalia, which resulted in a twenty-nine-year-to-life prison sentence

16   under California's Three Strikes Law.  The California Court of Appeal summarized the facts

17   of these offenses as follows:

18                  At approximately noon on August 24, 2003, Nou Lee parked
                   her 1989 light blue Toyota Camry at Arden Fair Mall in
19                  Sacramento.  She returned around 2:30 p.m. to find her car had
                   been stolen and notified mall security and the police of the theft.

20
                   Around 3:30 a.m. the following morning, Sacramento Police
21                  Officer Michael Smith recognized Lee's car being driven on
                   Grand Avenue in Sacramento.  Officer Smith caught up to the
22                  car and ran a record check that confirmed it was Lee's stolen
                   car.  The driver then pulled over to the side of the road on

01         Cypress Street without Officer Smith having to activate his lights or sirens.

02

03         Officer Smith arrested and searched defendant, who was driving Lee's car. The officer found a glass pipe commonly used to smoke rock cocaine in defendant's jacket pocket. There was no

04 key in the ignition, nor anywhere else in the car. Defendant had a small "master lock key," but no other keys, in his possession.

05 Officer Smith testified that Toyota Camrys are frequently stolen because they can easily be started with a shaved key, knife or

06 scissors, and that the "master lock key" found on defendant could be used to start a Toyota Camry.

07

08         After his arrest, defendant told Officer Smith that about an hour earlier, he had rented the car for $10 from a person he knew as "Woo-Woo." "Woo-Woo" had started the car and then pulled

09 the key out of the ignition before giving defendant the car. Defendant had used the "master lock key" found in his pocket

10 to turn off the car on Cypress Street. Defendant told the officer that he did not know the car was stolen but had felt "something

11 was wrong with the vehicle." Defendant admitted ownership of the pipe.

12

13         Ester Montaie was riding as a passenger in the Camry at the time of the stop. Montaie testified that in the early morning of August 25, 2003, she was walking back from the store when she

14 noticed defendant standing in front of his mother's house on Clay Street. Defendant was standing by his Cadillac at the time,

15 which she was aware did not run. She had seen him earlier that night, however, sitting in the Camry with a woman. She asked

16 defendant for a ride to Cypress Street. Defendant walked her over to the Camry, started it, and drove her to Cypress Street.

17 After they were stopped by police, defendant told her the car was stolen. She was upset because she was on parole and could

18 be found in violation for being in a stolen vehicle.

19         Montaie admitted at trial that she had been drinking beer and smoked rock cocaine earlier in the evening on August 24, 2003.

20 She had smoked .1 gram from a "baby jar" pipe. At trial, she was shown the pipe found in defendant's pocket. Montaie said

21 it was not hers and identified it as a "straight shooter" pipe. Shanean Washington, who lived across the street from

22 defendant and considered defendant to be "kind of like a godfather" to her, testified she saw a transaction between

REPORT AND RECOMMENDATION - 3

01         defendant and "Woo-Woo" wherein something exchanged
           hands between the men and, thereafter, "Woo-Woo" left
02         defendant with the Camry.  Washington said "Woo-Woo"
           would always start the car and keep the key in case the car was
03         not returned and he needed to retrieve it.

04         Fay Pruitt, defendant's sister, testified she saw defendant
           outside her house on the night of August 24, 2003.  Defendant
05         was talking to his friend when someone drove up and asked
           defendant if he wanted to drive the car.

06

07  (Dkt. 22, Lodged Document 4 at 2-4.)

08         Petitioner was convicted by jury of receiving a stolen vehicle (a felony) and

09  possessing drug paraphernalia (a misdemeanor).  Because petitioner had previously been

10  convicted of five robberies, for which he served four prison terms, and the court found these

11  convictions qualified as strikes under California's "Three Strikes Law," he was sentenced to

12  twenty-nine-years-to-life.

13         Petitioner timely appealed his conviction and sentence to the California Court of

14  Appeal, Third Appellate Division, raising issues not included in this federal petition.  The

15  Court of Appeal affirmed the trial court's judgment in an unpublished decision on July 18,

16  2005.  (*See id.*)  Petitioner did not file a petition for review in the California Supreme Court.

17  Accordingly, the Court of Appeal's decision became final.

18         On September 29, 2005, petitioner filed a petition for habeas corpus in the California

19  Supreme Court, raising four grounds for relief.  (*See* Dkt. 22, LD 5.)  Again, none of these

20  claims have been included in any of the prior federal petitions filed in this Court.  The

21  California Supreme Court denied this petition on July 19, 2006.  (*See id.*, LD 6.)

22         On January 9, 2007, petitioner filed his second state court petition for habeas corpus,

REPORT AND RECOMMENDATION - 4

01  this time in the Sacramento County Superior Court, presenting two claims for relief.

02  (*See id.*, LD 7 at 3(5) – 4(11).)  Those claims are described, *infra*.  The superior court denied

03  the petition on February 9, 2007, both on procedural grounds and on the merits.  The court

04  held the petition was filed fifteen months after the judgment was entered and was therefore

05  untimely.  (*See id.*, LD 8 at 1.)  The court cited *In re Robbins*, 18 Cal.4th 770, 811-812, 812

06  n.32 (1998), and *In re Clark*, 5 Cal.4th 750, 774-775 (1993), to support its decision.  While

07  reiterating that the petition was time-barred and that petitioner had set forth no explanation for

08  his delay, it found that petitioner also failed to set forth a prima facie case.  (*See id.* at 2.)

09      Petitioner presented the same two claims for relief to the California Supreme Court on

10  March 14, 2007.  (*See id.*, LD 9.)  On July 18, 2007, the California Supreme Court denied

11  petitioner's state petition without explanation, with citations to *In re Robbins* and *In re Clark*.

12  (*See id.*, LD 10.)  Petitioner's second amended petition presents in this Court the same two

13  grounds for relief he presented in his 2007 state habeas petition.  (*See* Dkt. 13 at 5(1)-5(9).)

14      III.    FEDERAL CLAIMS FOR RELIEF

15      Petitioner presents the following claims in his second amended petition:

16          1.  Petitioner contends that his right to due process of law was
            violated when the trial court abused its discretion by
17          violating the terms of a prior 1980 negotiated plea
            agreement;

18

19          2.  Petitioner contends that he received ineffective assistance
            [of] counsel:  a) [when] trial counsel was ineffective when
            he failed to ascertain whether the 1980 plea-bargained
20          convictions were "strikes" under California law; [and] b)
            [when] trial counsel was ineffective when he failed to enlist
21          the services of an expert witness.

22  (Dkt. 13 at 5(1), 5(6) and 5(9).)

REPORT AND RECOMMENDATION - 5

01      Respondent concedes that petitioner has exhausted both claims for relief, but contends

02   that these claims are not properly before this Court and, in the alternative, that his claims are

03   without merit.  (*See* Dkt. 21 at 5.)

04      IV.      STANDARD OF REVIEW

05      The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this

06   second amended petition as it was filed after the enactment of AEDPA.  *See Lindh v. Murphy*,

07   521 U.S. 320, 326-27 (1997).  Because petitioner is in the custody of the California

08   Department of Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the

09   exclusive vehicle for his habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th

10   Cir. 2004).  Under AEDPA, a habeas petition may not be granted with respect to any claim

11   adjudicated on the merits in state court unless petitioner demonstrates that the highest state

12   court decision rejecting his petition was either "contrary to, or involved an unreasonable

13   application of, clearly established Federal law, as determined by the Supreme Court of the

14   United States," or "was based on an unreasonable determination of the facts in light of the

15   evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).

16      As a threshold matter, this Court must ascertain whether relevant federal law was

17   "clearly established" at the time of the state court's decision.  To make this determination, the

18   Court may only consider the holdings, as opposed to dicta, of the United States Supreme

19   Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  It is also appropriate to look to

20   lower federal court decisions to determine what law has been "clearly established" by the

21   Supreme Court and the reasonableness of a particular application of that law.  *See Duhaime v.

22   Ducharme*, 200 F.3d 597, 598 (9th Cir. 1999).  In this context, Ninth Circuit precedent

01   remains persuasive but not binding authority.  *See Williams*, 529 U.S. at 412-13; *Clark v.*

02   *Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

03        The Court must then determine whether the state court's decision was "contrary to, or

04   involved an unreasonable application of, clearly established Federal law."  *See Lockyer v.*

05   *Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may

06   grant the writ if the state court arrives at a conclusion opposite to that reached by [the

07   Supreme] Court on a question of law or if the state court decides a case differently than [the]

08   Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.

09   "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

10   state court identifies the correct governing legal principle from [the] Court's decisions but

11   unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  At all

12   times, a federal habeas court must keep in mind that it "may not issue the writ simply because

13   [it] concludes in its independent judgment that the relevant state-court decision applied clearly

14   established federal law erroneously or incorrectly.  Rather that application must also be

15   [objectively] unreasonable."  *Id.* at 411.

16        In each case, the petitioner has the burden of establishing that the state court decision

17   was contrary to, or involved an unreasonable application of, clearly established federal law.

18   *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine

19   whether the petitioner has met this burden, a federal habeas court normally looks to the last

20   reasoned state court decision, which in this case is the Sacramento County Superior Court

21   decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Medley v. Runnels*, 506 F.3d

22   857, 862 (9th Cir. 2007).  (*See* Dkt. 22, LD 8.)

01     Finally, AEDPA requires federal courts to give considerable deference to state court

02 decisions, and state courts' factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).

03 Federal courts are also bound by a state's interpretation of its own laws.  *See Murtishaw v.*

04 *Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713

05 (9th Cir. 1993)).  Thus, while our review of the record is conducted independently with regard

06 to some claims, we continue to show deference to the state court's ultimate decision.  *See*

07 *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

08     V.     PROCEDURAL DEFAULT

09     Respondent contends this Court is barred from reviewing both of petitioner's federal

10 claims for relief on the ground that he procedurally defaulted in state court when he waited

11 fifteen months from the date of the judgment to file his state habeas corpus petition.

12 Respondent's contention echoes the rulings of the state courts, which dismissed petitioner's

13 claims under *Robbins* and *Clark* on the grounds that the petition was time-barred.  *See*

14 *Thorson v. Palmer*, 479 F.3d 643, 644-45 (9th Cir. 2007) (holding that California Supreme

15 Court's citation to *Robbins* was "a clear ruling that [the] petition was untimely"); *see also*

16 *Park v. California*, 202 F.3d 1146, 1152 n.3 (9th Cir. 2000) (finding Clark "dealt specifically

17 with the bar of untimeliness").  The trial court held, in the alternative, that petitioner failed to

18 make a prima facie case.  (*See* Dkt. 22, LD 8.)

19     It is a state court's prerogative to decline to review a claim based upon a procedural

20 default.  *See generally Wainwright v. Sykes*, 433 U.S. 72 (1977).  Absent several well-

21 established exceptions, federal courts are barred from reviewing a federal question decided by

22 a state court when the decision "rests on a state law ground that is independent of the federal

01   question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729

02   (1991).  To be "independent," the state rule must not be "interwoven with the federal law."

03   *Park*, 202 F.3d at 1152 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).  To be

04   "adequate" the state rule must be "well-established and consistently applied."  *Bennett v.*

05   *Mueller*, 322 F.3d 573, 583 (9th Cir. 2003) (citing *Poland v. Stewart*, 169 F.3d 573, 577 (9th

06   Cir. 1999)).

07          Even if the relevant state procedural rule is found to be independent and adequate, the

08   federal courts will reach the merits of the claim if the prisoner can demonstrate:  1) cause for

09   the default and actual prejudice as a result of the alleged violation of federal law; or 2) that

10   failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*,

11   501 U.S. at 750.

12          The state procedural rule at issue in this case is California's timeliness rule which bars

13   habeas petitions that are filed in state courts after "substantial delay."  *See King v. Lamarque*,

14   464 F.3d 963, 966 (9th Cir. 2006).  Procedural default rulings on this basis in California state

15   courts, however, have been rejected as "inadequate" by the Ninth Circuit Court of Appeals.

16   *See King*, 464 F.3d at 966 (citing *Morales v. Calderon*, 85 F.3d 1387, 1392 (9th Cir. 1996))

17   (stating "[t]he rule's ambiguity is not clarified by the California Supreme Court's application

18   of the timeliness bar, in part because the court rejects cases without explanation, only citing

19   *Clark* and *Robbins*, as it did here.").  Post-*King*, this Court is required to engage in a burden-

20   shifting process to determine whether any procedural rule, in this case California's timeliness

21   rule, was "adequate" at the time it was applied.  *See Bennett*, 322 F.3d at 585-86.  The burden-

22   shifting process begins when a respondent asserts an independent and adequate state

01  procedural ground as an affirmative defense.  The burden then shifts to petitioner to present

02  "specific factual allegations that demonstrate the inadequacy of the state procedure, including

03  citation to authority demonstrating inconsistent application of the rule." *Id.* at 586.

04  Respondent then bears "the ultimate burden of proving the adequacy" of the state procedural

05  rule. *Id.* at 585-86.

06      Here, respondent fulfilled his initial burden by pleading as an affirmative defense in

07  his answer "the existence of an independent and adequate state procedural ground" --

08  California's rule against filing state habeas corpus petitions after substantial delay.  (*See* Dkt.

09  21 at 12-13.)  The burden then shifted to petitioner to challenge the independency and/or

10  adequacy of that rule.  *Bennett*, 322 F.3d at 586.  If petitioner had challenged the adequacy of

11  the state's timeliness rule, the burden would then have shifted back to respondent to show

12  how the rule has become adequate post-*Clark*.  *See King*, 464 F.3d at 967.  Petitioner,

13  however, failed to file any documents in response to respondent's affirmative defense and,

14  thus, he failed to meet his burden under *Bennett*.

15      Nor has petitioner demonstrated, or even alleged, that he falls within the exception to

16  the procedural default doctrine -- cause and prejudice.  *See Coleman v. Thompson*, 501 U.S.

17  722, 750 (1991).  Because petitioner has not established cause to excuse his procedural

18  default, this court need not reach the prejudice prong of this inquiry.  *See Smith v. Murray*,

19  447 U.S. 527, 533 (1986).  Finally, petitioner has not alleged or demonstrated that a

20  fundamental miscarriage of justice would result if his federal claims were not reviewed, as

21  this category of claims is reserved for "extraordinary instances when a constitutional violation

22

01   probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499

02   U.S. 467, 494 (1991).  There is no evidence in the record to support a claim of innocence.

03        Thus, under the burden-shifting process described in *Bennett*, petitioner's failure to

04   present a challenge to the state court's procedural bar ruling requires this Court to sustain the

05   dismissal of his claims on that basis.  This is consistent with the federal court's obligation to

06   give considerable deference to state court decisions.  *See* Section IV at. 8, *supra*.

07        Petitioner's procedural default is a fully sufficient basis for denial of his petition in this

08   Court.  But even if petitioner attempts to make, and if this Court permits him to make, a

09   belated showing to avoid his procedural default, and if he is successful on that issue, his

10   second amended petition must fail on the merits, for the reasons discussed below.

11        VI.     DISCUSSION

12        A.     Violation of Plea Agreement

13        Petitioner's asserts that the trial court failed to comply with the negotiated terms of his

14   1980 plea agreement, thereby violating his federal constitutional due process rights.  (*See* Dkt.

15   13 at 5(1).)  Petitioner maintains that when he pled guilty in 1980, "he was informed of only

16   one direct, consequential effect that his 1980 plea of guilty would have on any future felony

17   conviction: that his 1980 convictions, via, plea settlement, could enhance the prison term of a

18   future felony conviction from one to five years."  (*Id.* at 5(2).)  Thus, when the trial court

19   relied upon these prior felonies as strikes, petitioner claims the court breached the terms of his

20   plea agreement.  He contends he is now entitled to specific performance, pursuant to *Brown v.*

21   *Poole*, 337 F.3d 1155 (9th Cir. 2003), which held that a prosecutor's oral promise during the

22

01 plea colloquy is part of the contract between the defendant and the State and entitles a

02 defendant to specific performance of the promise.

03     Respondent contends not only that petitioner fails to establish a due process violation

04 due to the alleged plea agreement breach, but that the state court's decision denying this claim

05 was neither contrary to nor an unreasonable application of clearly established law.  (*See* Dkt.

06 21 at 16-17.)

07     Although a criminal defendant has a due process right to enforce the terms of a plea

08 agreement, there is no evidence in this case to support petitioner's expectation about how

09 future sentences would be decided, nor is there any evidence to support that such expectations

10 were part of the plea agreement.  S*ee Santobello v. New York*, 404 U.S. 257, 261-62 (1971)

11 (stating that "[t]he determination of [defendant's] rights and responsibilities under the plea

12 agreement is controlled by the principles of fundamental fairness imposed by the Due Process

13 Clause").

14     Moreover, it is clearly established federal law that the interpretation of state court plea

15 agreements, and all contractual obligations resulting there-from, are generally matters of state

16 law.  *See Buckley v. Terhune,* 441 F.3d 688, 694-695 (9th Cir.2006) (citing *Ricketts v.*

17 *Adamson,* 483 U.S. 1, 6 n.3 (1987)).  "Plea agreements are contractual in nature and are

18 measured by contract law standards."  *Brown v. Poole,* 337 F.3d 1155, 1159 (9th Cir. 2003)

19 (quoting *United States v. De La Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993)).  California law

20 requires that courts first look to the plain meaning of the agreement's language.  *See Buckley,*

21 441 F.3d at 695 (citing Cal. Civ.Code §§ 1638, 1644).  Where the language is ambiguous, the

22 terms "must be interpreted in the sense in which the promisor believed, at the time of making

01  it, that the promisee understood it."  Cal. Civ. Code. §1649. "The inquiry considers not the

02  subjective belief of the promisor but, rather, the 'objectively reasonable' expectation of the

03  promisee." *Buckley,* 441 F.3d at 695 (quoting *Bank of the West v. Superior Court,* 2 Cal.4th

04  1254, 1265 (1992)).

05         Thus, in order to demonstrate that there was in fact a breach, petitioner would need to

06  point to some language to show that a particular term in his plea agreement had been

07  breached.  As stated above, petitioner claims that "he was informed of only one direct,

08  consequential effect that his 1980 plea of guilty would have on any future felony conviction:

09  that his 1980 convictions, via, plea settlement, could enhance his prison term of a future

10  felony from one to five years."  (Dkt. 13 at 5(2).)  Petitioner has presented no document or

11  record citation to support that statement, however.

12         In addressing this precise issue, the Sacramento County Superior Court held, in a well-

13  reasoned opinion, that:

> [petitioner] does not state that the exact language of the court or anyone at the change of plea hearing in the cases was that the convictions could not be used in the future for any purpose other than a one-to-five-year enhancement; rather, his claim is only that he was told that a one-to-five-year enhancement was a possible future consequence of the plea. That is not a promise that the convictions could not be used for any other purpose in the future.  Nor does petitioner attach a copy of the reporter's transcript for the change of plea hearing in Sacramento County Superior Court Case Nos. CR 58371 and CR 58454, to show that he was made such a promise.  Nor does the court's own copy of the reporter's transcript for the change of plea hearing, which is missing page [5], show that anyone at any time ever mentioned that the plea could have consequences of any kind at all in a future prosecution (compare Brown v. Poole (9th Cir. 2003), 337 F.3d 1155 [defendant who was promised release after serving certain number of years in prison disciplinary-free was entitled to specific enforcement, on federal habeas corpus]).

REPORT AND RECOMMENDATION - 13

01
02
03
04

> As the burden is on petitioner to show that any promise was ever made at all, that his convictions upon his plea would not be able to be used in any fashion other than as a one-to-five-year prior enhancement, and he has failed to meet this burden, he would not be entitled to relief even if his claim was not barred under Robbins/Clark….

05 (Dkt. 22, LD 8 at 2.)

06      As the state court found, there is no basis in the record to support a reasonable

07 inference that the plea agreement carried a guarantee of any type of sentencing limitation.

08 Even if there was a discussion on the record on the missing page 5 regarding the use of this

09 conviction in the future, this does not rise to the level of guarantee that those convictions

10 would not be used for any other purpose.  In *Brown*, the prosecutor stated:

11
12
13

> [n]ow, if you behave yourself at the state prison, as most people do, and I am inclined to believe that you will, *you are going to get out* in half the time. *You get half of that* 15 years off, or half of that 17 years off with the imposition of the extra two years, for good time/work-time credits. That's up to you.

14 337 F.3d at 1157-58 (emphasis added).

15      The prosecutor in *Brown* promised the defendant that he would "get out in half the

16 time" if he behaved himself in prison.  *Id.* at 1158.  Unlike *Brown*, there is no evidence that

17 the prosecutor in this case promised petitioner his four 1980 convictions would not be used

18 for any other purpose in the future.  To the extent petitioner believed the plea colloquy

19 guaranteed him this limitation, he has failed to demonstrate that such a term existed in his plea

20 agreement.  Accordingly, the state court's decision denying this claim is neither contrary to

21 nor an unreasonable application of clearly established Supreme Court precedent.  Petitioner

22 has failed to satisfy his burden of showing he is entitled to the issuance of the writ.  *See Silva*

er

01 *v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner's burden to show he is in custody

02 in violation of the constitution).

03       B.     <u>Ineffective Assistance of Counsel (Plea Agreement)</u>

04      Petitioner claims that counsel was ineffective when "he failed to ascertain whether the

05 1980 plea-bargained convictions were 'strikes' under California law." (Dkt. 13 at 5(6).)

06 Respondent contends that because the 1980 convictions were correctly considered strikes, it

07 would have been futile for defense counsel to challenge their use, and defense counsel's

08 representation therefore cannot be considered ineffective. (Dkt. 21 at 20.)

09      In order to establish ineffective assistance of counsel, petitioner must demonstrate that

10 counsel's representation fell below the objective standard of reasonableness and that the

11 deficient performance affected the result of the proceeding. *United States v. Strickland*, 466

12 U.S. at 687-88. A strong presumption exists that counsel's conduct falls within the wide-

13 range of reasonable professional assistance. *Id.* at 689. To demonstrate prejudice, "[t]he

14 defendant must show that there is a reasonable probability that, but for counsel's

15 unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

16 The United States Supreme Court defines "reasonable probability" as a "probability sufficient

17 to undermine confidence in the outcome." *Id.*

18      Moreover, "[i]f a state court has already rejected an ineffective assistance of counsel

19 claim, a federal court may [only] grant habeas relief if the decision was 'contrary to, or

20 involved an unreasonable application of, clearly established Federal law, as determined by the

21 Supreme Court of the United States." *Id.* at 5 (quoting 28 U.S.C. § 2254(d)(1)). This Court's

22

01  review of an ineffective assistance of counsel claim is therefore "doubly deferential" under

02  AEDPA.  *See Yarborough v. Gentry*, 540 U.S. 1, 6, (2003) (per curium).

03       The Sacramento County Superior Court considered this claim and found that petitioner

04  failed to set forth a prima facie case for relief as he failed to show that his underlying claim

05  had merit.  (*See* Dkt. 22, LD 8 at 2.)  It is clear from the California Court of Appeal opinion

06  on direct review that defense counsel together with the trial court worked diligently to resolve

07  the sentencing issues in this case.  (*See id.*, LD 4 at 4-9.)  To now claim defense counsel was

08  ineffective in researching and handling this aspect of his case is baseless.  Because petitioner

09  fails to show that the state court's decision was contrary to or an unreasonable application of

10  *Strickland*, I recommend the court deny petitioner's claim.

11            C.        Ineffective Assistance of Counsel (Expert Witness)

12       Petitioner claims that counsel was ineffective when "he failed to enlist the services of

13  an expert witness."  (Dkt. 13 at 5(9).)  Specifically, he asserts defense counsel failed to elicit

14  testimony from an expert witness regarding the effects of alcohol, rock cocaine, and sleep

15  deprivation on a person's perception.  Such testimony would allegedly have undermined one

16  of the prosecution's key witnesses and shown that she was imagining and hallucinating that

17  he had made incriminating statements to her.  (*See id.* at 12.)  Respondent contends not only

18  that petitioner's claim is without merit, but that the state court's opinion on this issue was

19  neither contrary to nor an unreasonable application of *Strickland*.  (*See* Dkt. 21 at 20-22.)

20       The Sacramento County Superior Court considered this claim and found not only that

21  petitioner was time-barred, but that his claim was without merit.  The court stated that

22  petitioner failed to:

01     …attach an affidavit from an expert witness, setting forth what
the expert would have testified to had the expert been called at
02 trial.  Nor does petitioner show that even if presented at trial,
that it would have been reasonably probable to have made a
03 difference in the outcome of the trial.  The witness admitted on
the witness stand that she had been drinking, had not slept for
04 two days, and had smoked crack cocaine before the incident
occurred, and a reasonable layperson would not have needed an
05 expert to explain that these could have affected her perception.
Further, an officer testified that as soon as he pulled the car
06 over, he placed the witness in his patrol car, and the witness
immediately told him that petitioner had told her that the car
07 was stolen and that she was on parole, and that she was clear in
her statement.  An expert's testimony on the effects of the drugs
08 and sleep deprivation would not likely have affected the
credibility of the witness any further than the witness's own
09 admission about taking the drugs and being sleep deprived.  As
such, even if the claim were not barred under <u>Robbins/Clark</u>, it
10 would fail in any event (…<u>Strickland v. Washington</u> (1984) 466
U.S. 668).

11

12 (Dkt. 22, LD 8 at 3.)  There is no evidence in the second amended petition or elsewhere in the

13 record to support petitioner's assertion that defense counsel was ineffective in failing to put

14 on an expert witness to contradict Ms. Montaie's testimony.  *See Kimmelman v. Morrison*,

15 477 U.S. 365, 381 (1986) ("the defendant bears the burden of proving that counsel's

16 representation was unreasonable under prevailing professional norms and that the challenged

17 action was not sound strategy").  Because petitioner fails to show that the state court's

18 decision on this issue was contrary to or an unreasonable application of *Strickland*, I

19 recommend the court deny this claim as well.

20     VII.   CONCLUSION

21     For all of these reasons, I recommend this Court find that: (1) petitioner's procedural

22 default in state court is a fully sufficient basis for denial of his petition; and (2) even in the

REPORT AND RECOMMENDATION - 17

01    absence of any procedural default, his second amended petition must fail on the merits.

02    Accordingly, I recommend the Court find that the Sacramento County Superior Court's Order

03    denying petitioner's claims of denial of due process and ineffective assistance of counsel was

04    not contrary to, or an unreasonable application of, clearly established Federal law.  The Court

05    should therefore enter an Order accepting and adopting this Report and Recommendation,

06    denying the second amended petition, and directing that judgment be entered dismissing this

07    action with prejudice.

08            This Report and Recommendation is submitted to the United States District Judge

09    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty (20)

10    days of being served with this Report and Recommendation, any party may file written

11    objections with this Court and serve a copy on all parties.  Such a document should be

12    captioned "Objections to Magistrate Judge's Report and Recommendation."  Either party may

13    then respond to the other party's objections with fourteen (14) days of being served a copy of

14    such written objections.  Failure to file objections within the specified time may waive the

15    right to appeal the District Court's Order.  *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

16    1991).  A proposed Order accompanies this Report and Recommendation.

17            DATED this 7th day of December, 2009.

18

19                                                    _____

20                                                    JOHN L. WEINBERG
                                                      United States Magistrate Judge

21

22

REPORT AND RECOMMENDATION - 18